UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION
**Electronically Filed**

| | |
|---|---|
| **In re the Application of :** | ) |
| | ) |
| **EDISON ALBERTO CARVAJAL VASQUEZ,** | ) Case No.: 3:18-cv-00137 |
| | ) |
| Petitioner | ) |
| | ) |
| and | ) |
| | ) |
| **PAOLA ANDREA GAMBA ACEVEDO** | ) |
| | ) |
| Respondent. | ) |

**PETITIONER'S REPLY IN SUPPORT OF PETITION FOR RETURN OF CHILD TO PETITIONER PURSUANT TO THE CONVENTION ON THE CIVIL ASPECTS OF <u>INTERNATIONAL CHILD ABDUCTION</u>**

I. **INTRODUCTION**

In her Brief in Support of the Respondent, Respondent fails to establish that the United States is TCG's habitual residence, nor does Respondent show by clear and convincing evidence that the defenses of consent, grave risk, or a violation of fundamental human rights should be invoked.[1]

II. **ARGUMENT**

   A. **Respondent has not presented evidence to refute TCG's established habitual residency in Colombia.**

Respondent's testimony and proffered evidence is not sufficient to establish a new habitual residence for TCG in the United States. Respondent's assertion that Petitioner supported her entry into the United States through Mexico is based on circumstantial evidence that does not

---
[1] Initials of the minor child ("TCG") will be used throughout this reply brief.

support a showing that Petitioner intended for TCG to permanently reside in the U.S. Further, Respondent's testimony that Petitioner brought "some of the child's belongings to the U.S." similarly does not demonstrate that Petitioner intended for TCG to live in the U.S. permanently. (Resp't's Br., p. 11). In fact, this can be easily replied upon to prove the opposite. A plan to visit Respondent in the U.S. is also not evidence to support Respondent's assertion that TCG's habitual residence was the United States.

As stated in *Friedrich v. Friedrich*, 983 F.3d 981 (6th Cir. 2007) ("*Friedrich I*"), the court should focus on "the child, not the parents, and examine past experience, not future intentions." *Friedrich I*, 984 F.2d at 1400. It has been established that TCG is a citizen of Colombia. Hr'g Exh. 2; Hr'g Tr. 54:25, 55:1-3, Feb. 21, 2018.[2] Prior to traveling to the United States in August 2016 on a tourist visa, TCG resided exclusively in Colombia. Petition, Exh. G. Respondent has not disputed this fact. At the time TCG was brought to the United States on a tourist visa, TCG's habitual residence was Colombia. *See Friedrich I*, 983 F.3d at 1402; *see also Simcox v. Simcox*, 511 F.3d 594, 602 (6th Cir. 2007).

Neither the acclimatization standard set forth in *Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2012), nor the "shared parental intent" considerations in *Ahmed v. Ahmed*, 867 F.3d 682 (6th Cir. 2017), permit a finding that TCG's habitual residence changed from the Colombia to the United States at the time of TCG's wrongful retention and the February 24, 2017 filing of Petitioner's Complaint in Colombia against Respondent for the arbitrary exercise of the custody of an underaged child on February 24, 2017. Petition, Exh. G, Declaration Establishing Habitual Residence of the Child, Exhibit 1 to the Declaration, p. 11-18; Hr'g Tr. 30:2-6, Feb. 20, 2018.

---

[2] Cited hearing transcript pages are filed contemporaneously for the convenience of the Court as Attachment 1 to Petitioner's Reply Brief.

First, application of the acclimatization standard is not appropriate in this instance based on the age of TCG at the time TCG was wrongfully retained in the United States. *See Simcox*, 511 F.3d at 604 n.2 ("Of course, th[e acclimatization] standard may not be appropriate in cases involving infants or other very young children.") (citing *Friedrich I*, 983 F.2d at 1401–02); *Robert*, 507 F.3d at 992 n.4. Therefore, the court may consider the "shared parental intent" of where the parents last mutually intended the child to live. *See Ahmed* at 689-90.[3]

The facts presented do not establish a shared mutual intent for TCG to live permanently in the United States. Respondent has submitted no evidence that Petitioner relinquished his custody rights of TCG prior to or during the parties' travel to the United States in 2016 or early 2017. Hr'g Tr. 13:5-22, 52:2-4, Feb. 20, 2018. At all times, Petitioner maintained his employment in Colombia, and did not resign his position. Hr'g Exh. 9; Hr'g Tr. 43:3-15, Feb. 20, 2018. Respondent remains a citizen of Colombia. Petition, Exh. G, Declaration Establishing Habitual Residence of the Child, Exhibit 1 to the Declaration, p. 8-9; Hr'g Tr. 52:10-15, Feb. 21, 2018. Even Petitioner and Petitioner's sister, Kelly Chambers, testified that Petitioner and Respondent did not share a "shared mutual intent" to relocate to the United States with TCG.

Respondent testified, "[H]e [Petitioner] says that I will come back in December [to the United States] to stay then. And but when he gets there in December he says, no, he can't really because he hasn't finished his studies and his career as an attorney. And beside that, he sends word to my sister to say that he's a lawyer, he's not coming here to be a dishwasher." Hr'g Tr. 32:16-23, Feb. 21, 2018.

---

[3] Even if the acclimatization test applies, factual application does not support a finding that the United States is TCG's habitual residence. *See Robert*, 507 F.3d at 995-96 (citing *Karkkainen v. Kovalchuk*, 445 F.3d 280 (3d Cir. 2006)). In *Robert*, the court looked to a number of factual circumstances set forth in *Karkkainen* in determining whether a new country met the tests of "acclimatization" and "settled purpose." This included "academic activities [which] are among 'the most central…in a child's life' and therefore highly suggestive of acclimatization." 445 F.3d at 293. TCG is not enrolled in school in the United States and spends the majority of time at the home of David and Kelly Chambers. Hr'g Tr. 73:11-25, 74:1-13, Feb. 21, 2018.

Kelly Chambers, Respondent's sister testified as to Petitioner's intent: "But he [Petitioner] would contradiction himself because sometimes he seemed very enthusiastic about it [moving to the United States], very animated, but other times he would be doubtful, he would say—it was like he wasn't really sure he was ready to start all over again from nothing because things were good for him in Colombia, in Medellin." Hr'g Tr. 56:17-22, March 14, 2018. And when asked, "Do you know whether or not the plan for Mr. Carvajal, your sister, and Thiago to remain in the United States changed when your sister rejected Mr. Carvajal's marriage proposal?," Kelly Chambers responded, "I think at one point it changed for him. Because she [Respondent] didn't want to give him another chance." Hr'g Tr. 65:14-18, March 14, 2018.

Such testimony from Respondent indicates that Petitioner and Respondent never had a "shared mutual intent" to relocate with their minor child, TCG, permanently to the United States. As such, TCG's habitual residence of Colombia has not been abandoned, and for this reason, the Court should find that TCG's habitual residence is still in Colombia.

> **B.** **Respondent has not proven by a preponderance of the evidence that Petitioner consented to TCG's retention in the United States.**

Respondent's assertions regarding Petitioner's "withdrawal of consent" are not supported by factual evidence or legal authority. First, Respondent asserts that Petitioner consented to TCG's retention in the United States. To support this contention, Respondent alleges in her brief that (1) Petitioner knew Respondent was traveling the United States and helped plan and pay for her entry; (2) Petitioner knew Respondent would not live without TCG; and (3) TCG had only ever lived with Respondent. (Resp't's Br., p. 12, 15-16).

As for the first and second contentions, Respondent cites to no facts or evidence. Further, whether Petitioner knew that Respondent was traveling illegally to the United States does not carry any weight in the analysis of whether Petitioner consented to TCG remaining in the United

4

States permanently. As for the third contention, Respondent immediately disproves this as false when she admits that TCG was without his mother while Respondent traveled without TCG through Mexico into the United States illegally, and while she was subsequently detained.

After Respondent asserts that Petitioner consented to TCG's retention, she then alleges that he withdrew his consent. Respondent appears to concede that the filing of a Hague Convention petition "effects withdrawal of consent." (Resp't's Br., p. 15). Many courts have agreed with Respondent on this point. *See Lops v. Lops*, 140 F.3d 927, 945 n. 26 (11th Cir. 1998); *Moreno v. Martin*, No. 08-22432-CIV, 2008 WL 16958, at *13 (S.D. Fla. Oct. 23, 2008)[4]. However, Respondent goes on to assert that if a Hague Convention case "effects withdrawal of consent . . . then a consent defense could never win." (Resp't's Br., p. 15). Respondent cites to no legal precedent to support this contention.

In fact, many courts have drawn the opposite conclusion. In *Tabacchi v. Harrison*, the court identified the father's pursuit of a Hague Convention petition as the "most important[]" evidence that he had "been fighting to get his daughter back since the day she was taken from Italy," and looked to the filing of the father's Hague Convention petition as clear evidence that he did not consent or acquiesce to his child's removal. *Tabacchi v. Harrison*, 2000 WL 190576 at *11 (N.D. Ill. Feb. 10, 2000).

Similarly, Petitioner has been fighting to get his son back since he realized Respondent's intent to retain TCG in the United States beyond the expiration of TCG's travel visa. Petitioner testified that he understood TCG's travel visa to permit his son to remain in the United States for six months. Hr'g Tr. 29:5-8, Feb. 20, 2018. Petitioner traveled with his son to the United States on August 26, 2016. Hr'g Tr. 30:2-6, Feb. 20, 2018. He returned to Colombia on January 9, 2017

---

[4] Unreported cases are filed contemporaneously for the convenience of the Court as Attachment 2 to Petitioner's Reply Brief.

and consented to his son remaining in the United States to visit with his relatives "considering he still had more time available [on his travel visa]." Hr'g Tr. 32:2-21, Feb. 20, 2018. TCG's travel visa expired on February 26, 2017, and Petitioner filed a Complaint in Colombia against Respondent for the arbitrary exercise of the custody of an underaged child on February 24, 2017. Petition, Exh. G, Declaration Establishing Habitual Residence of the Child, Exhibit 1 to the Declaration, p. 11-18. Petitioner then filed his Petition to the Hague Convention on May 30, 2017. Petition, Exh. F, p. 6. Petitioner's actions are consistent with his testimony that he did not consent to Respondent's retention of TCG in the United States beyond the expiration of TCG's travel visa.

In fact, the paragraph in which Respondent discusses withdrawal of consent is misleading in several ways. Respondent states that "[w]ithdrawal of consent is only relevant where the consent itself was conditional." (Resp't's Br., p. 15). The cited cases, however, do not support this contention. If anything, *Barzilay v. Barzilay*, 600 F.3d 912, 919 (8th Cir. 2010), supports the contention that a conditional agreement between two parties may not indicate an actual intent. Other cases are consistent with this proposition. *See, e.g.*, *Mota v. Castillo*, 692 F.3d 108, 117 (2d Cir. 2012) ("[Petitioner mother's] consent to her daughter's relocation was conditioned upon her own ability to join [respondent] father and daughter in New York. The failure of this condition annulled [petitioner mother's] consent."); *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005) (holding that "[t]he nature and scope of the petitioner's consent, and any conditions or limitations, should be taken into account" in examining a consent defense under Article 13 of the Convention).

Respondent has not proved the defense of consent by a preponderance of the evidence. The factual and legal assertions are misstated, and do not show that Petitioner's "subjective

6

intent", *Baxter*, 423 F.3d at 371, as evidenced by Petitioner's "statements or conduct", *Nicolson v. Pappalardo*, 605 F.3d 100, 105 (1st Cir. 2010), was to consent to TCG's removal or retention from Colombia. In addition, Respondent made no argument regarding acquiescence. For these reasons, the Petitioner did not consent or acquiesce to TCG's retention the United States.

      **C.    TCG would not be exposed to a grave risk upon his return to Colombia.**

The Hague Convention's general rule of return may be narrowly excepted if a respondent establishes by clear and convincing evidence that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *Acosta v. Acosta*, 725 F.3d 868, 875 (8th Cir. 2013) (quoting *Vasquez v. Colores*, 648 F.3d 648, 650 (8th Cir. 2011) (citing Hague Convention art. 13b; *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir. 1995) (explaining that exceptions to the Hague Convention should be construed narrowly); 42 U.S.C. § 11603(e)(2)(A)).

"General evidence of harm is insufficient to satisfy Article 13b." *Nunez–Escudero v. Tice–Menley*, 58 F.3d 374, 376 (8th Cir. 1995). Rather, a grave risk of harm may exist in cases involving "serious abuse or neglect." *Acosta*, 725 F.3d at 875 (quoting *Vasquez*, 648 F.3d at 650. "The 'grave risk' exception is to be interpreted narrowly, lest it swallow the rule." *Simcox*, 511 F.3d at 604 (citing *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996) [hereinafter *Friedrich II*]). That rule—that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned," 42 U.S.C. § 11601(a)(4)—was designed to protect the interests of the state of habitual residence in determining any custody dispute, and to deter parents from unilaterally removing children in search of a more sympathetic forum. *Simcox*, 511 F.3d at 604 (citing *Friedrich II*, 78 F.3d at 1064; Linda Silberman, *Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis*, 28 FAM. L.Q. 9, 11 (1994)).

7

Respondent appears to argue that Petitioner put her at "grave risk" when she lived in Colombia, and therefore TCG, her child, should not be returned there with Petitioner. The focus, however, should be on whether TCG would experience a grave harm in the future, not if Respondent experienced a grave harm in the past. Throughout Respondent's arguments, she asserts that alleged abuse by Petitioner to her is evidence of a "grave risk" to TCG. While some courts have found abusive situations involving parents to support a finding of "grave risk" to the child, those situations are far more extreme and continuous than those alleged by Respondent to have occurred here. For example, Respondent cites to *Miltiadous v. Tetervak*, 686 F.Supp.2d 544, 554 (E.D. Pa. 2010), for the proposition that "Respondent's evidence of spousal abuse compels a finding that the grave risk of harm affirmative defense applies here." The facts in *Miltiadous* are distinguishable from the present facts. In *Miltiadous*, the petitioner father "repeatedly" beat the respondent mother, one time breaking her nose. *Id.* He kept a gun in those and threatened to kill the respondent mother and aimed the gun at her several times. *Id.* No such abuse has been alleged by Respondent in this case.

Even if the Court accepts Respondent's unsubstantiated assertions that Petitioner has physically harmed her, she has not presented clear and convincing evidence that any abuse occurred at such a magnitude as to warrant a finding of grave risk. Isolated physical harm directed at a parent rather than a child is not enough to warrant triggering of the narrow "grave risk" defense. *See Altamiranda Vale v. Avila*, 538 F.3d 581, 587 (7th Cir. 2008) (affirming district court's rejection of grave risk exception where evidence consisted of a contested assertion that father once struck his son with a video-game cord); *Whallon v. Lynn*, 230 F.3d 450, 460 (1st Cir. 2000) (mother's allegation that father had verbally abused her and shoved her on one

occasion was insufficient to establish a grave risk of harm, particularly where there was no evidence that father had ever harmed child).

> **D. Respondent has not shown by clear and convincing evidence that TCG's return to Colombia would violate a "fundamental principle of human rights."**

Article 20 of the Hague Convention allows a court to refuse to return a child if the Respondent can show by clear and convincing evidence that doing so "would violate fundamental principles relating to the protection of human rights and fundamental freedoms." 42 U.S.C. § 11603(e)(2)(A). Article 20 is almost never invoked. *Hazbun Escaf v. Rodriguez*, 200 F. Supp. 2d 603 (E.D. Va. 2002), *aff'd*, 52 F. App'x 207 (4th Cir. 2002), is one of the few reported decisions in which a court conducted an analysis of Article 20. The Court noted that Article 20 was meant to be "restrictively interpreted and applied . . . on the rare occasion that return of a child would utterly shock the conscience of the Court or offend all notions of due process." *Id.*

> The parties have not cited, nor has the Court found, any authority applying the Article 20 exception to return based on "fundamental principles of the [United States] relating to the protection of human rights and fundamental freedoms." This seldom cited and somewhat obscure provision was adopted as a compromise between those countries that wanted a public policy exception in the Convention and those that did not. It was meant to be "restrictively interpreted and applied . . . on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process

*Id. See also Aldinger v. Segler*, 263 F. Supp. 2d 284, 290 (D.P.R. 2003) (rejecting the Article 20 defense and noting that Article 20 is to be "restrictively interpreted and applied").

In *Freier v. Freier*, the district court rejected the mother respondent's argument that return to Israel for divorce and custody proceedings would violate Article 20. 969 F. Supp. 436, 444 (E.D. Mich. 1996). The court was satisfied that the mother's "human rights and fundamental freedoms are not in jeopardy and are protected by the due process available in the civil and Rabbinical courts of Israel." *Id.*

9

Here, Respondent asserts that TCG should remain in the United States rather than return to his habitual residence in Colombia because doing otherwise would violate "fundamental rights." Respondent focuses on how her own rights would be violated if she were to return to Colombia. Hr'g Tr. 62:14-21, March 14, 2018. However, this analysis rests on TCG's return to Colombia, not the Respondent's. No evidence has been presented to indicate that TCG would be in any danger upon his return to Colombia. As such, Respondent has not provided sufficient evidence to invoke this narrow and rarely used defense to the Hague Convention's general principle of return.

### Conclusion

For the reasons set forth herein, Petitioner asks this Court grant the following relief:

a. That TCG be promptly returned to the child's habitual residence in Medellin, Colombia with the Petitioner;

b. That this Court award all costs and fees incurred to date as required by 42 U.S.C. 11607, reserving jurisdiction over further expenses; and

c. That this Court grant any such further relief as justified and its cause may require

Respectfully submitted this 19th day of March, 2018.

                                                    s/ Alex S. Fisher
                                                  ALEX S. FISHER
FROST BROWN TODD LLC
The Pinnacle at Symphony Place
150 3rd Ave South, Suite 1900
Nashville, TN 37201
afisher@fbtlaw.com
(615) 251-5594

COUNSEL FOR PETITIONER
EDISON ALBERTO
CARVAJAL VASQUEZ

## CERTIFICATE OF SERVICE

       I hereby certify that on March 19, 2018 I electronically filed the foregoing document with the United States Federal District Court for the Middle District of Tennessee by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Joel Sanderson, Esq.
Monarch Immigration Rights Advocates PLLC
5252 Hickory Hollow Pkwy, Suite 270A
Antioch, TN 37013
joel@mira.legal
615-307-6472
*Attorneys for Respondent*

                                              s/Alex S. Fisher

0137227.0652721   4838-0820-0031v5